UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JACKI SUE GRABOW, | Case No. 20-10985 |
| Plaintiff, | Matthew F. Leitman |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

Plaintiff Jacki Sue Grabow ("Grabow") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and disabled widow's benefits under the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 13), the Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's reply (ECF No. 16), the Commissioner's sur-reply (with leave) (ECF No. 18), and the administrative record (ECF No. 11).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's

motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's decision.

I.   **DISCUSSION**

   A.   **Background and Administrative History**

Grabow alleges her disability began on April 12, 2016, at the age of 57. (ECF No. 11, PageID.68). She filed applications for disability insurance benefits and disabled widow's benefits on October 4, 2016. In her disability report, she listed a number of ailments which negatively impacted her ability to work. (*Id.* at PageID.310). The ailments included: shattered right kneecap, arm injury, and right finger injury with severe swelling. Her application was denied on June 5, 2017. (*Id.* at PageID.68).

Following the denial, Grabow requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at PageID.182-83). On January 17, 2019, ALJ John Carlton held a hearing, at which Plaintiff and a vocational expert ("VE"), Amy Kutschbach, testified. (*Id.* at PageID.86-135). On February 26, 2019, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.68-77).

Subsequently, Grabow submitted a request for review of the hearing decision. On February 18, 2020, the Appeals Council denied her request for

review. (*Id.* at PageID.54-57). Thus, the ALJ's decision became the Commissioner's final decision.

Grabow timely commenced the instant action on April 21, 2020.

**B.     Plaintiff's Medical History**

Grabow's argument on appeal to this Court is limited to an issue regarding her right knee. On April 21, 2016 she was involved in a car accident during which she sustained an injury to her knee. (ECF No. 11, PageID.437). Five days later she underwent surgery on that knee. In the months following her surgery, Grabow struggled with a reduced range of motion in her knee. In July 2016, her knee flexion was not yet 90 degrees. (*Id.* at PageID.464). By December 28, 2016, she had 100-degree flexion. (*Id.* at PageID.454). She received additional treatment for her right knee in 2018. During January 2018 she received an injection in the knee. (*Id.* at PageID.707). A November 2018 MRI revealed what appeared to be an old ACL tear and medial meniscus tear. (*Id.* at PageID.694). Surgery to repair the meniscus tear was performed in January 2019.

**C.     The Administrative Decision**

Before beginning the five-step sequential evaluation, the ALJ noted that Grabow previously met the non-disability requirements for disabled widow's benefits, but the prescribed period ended on March 31, 2014. (*Id.* at PageID.70-71). Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

3

sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2016, the alleged onset date. (*Id.* at PageID.71). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: right knee post ORIF post MVA and torn meniscus, osteoporosis of lumbar spine, osteopenia of bilateral hips, degenerative disc disease, ocular hypertension of left eye, bilateral posterior capsular opacification, and bilateral psuedophakadia. (*Id.* at PageID.71). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.72). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except that claimant cannot climb ladders, ropes, or scaffolds, cannot walk on slippery or uneven surfaces, cannot overhead reach bilaterally, cannot be exposed to unprotected heights or dangerous machinery, and can never be required to operate a motor vehicle. Claimant can occasionally climb stairs and ramps and occasionally stoop, crouch, crawl, and kneel.

(*Id.* at PageID.72-73). At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as an inspector and hand packager. (*Id.* at PageID.76-77). Therefore, the ALJ concluded that Plaintiff had not been under a

---

[1] The claimant's "residual functional capacity" is an assessment of the most that claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

disability, as defined in the Social Security Act, since April 21, 2016, through the date of the decision. (*Id.* at PageID.77). The ALJ did not make a finding at Step 5.

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.     Analysis**

Grabow's sole argument on appeal is that the ALJ did not properly weigh her treating physician's assistant, PA-C Molly Minard's opinion on the limitations in her right knee, specifically the opinion that Grabow could not stoop or kneel. She argues the ALJ's stated reasons for giving the opinion little weight are illogical and insufficient to meet the ALJ's burden of explaining the weight determination in accordance with SSR 06-03p. (ECF No. 13). Grabow contends the error is not harmless because she was found capable of performing past relevant work which involved stooping. If she is incapable of stooping, and thus incapable of

performing past relevant work, the regulations would render her disabled. The Commissioner responds that the ALJ properly weighed PA-C Minard's opinion as an opinion from an "other source." The Commissioner argues the reasons given for the weight determination and the discussion of the medical evidence are sufficient to meet the requirement to consider the opinion. (ECF No. 17).

As a physician's assistant, PA-C Minard is not an acceptable medical source under 20 C.F.R. § 404.1513(a). As the Sixth Circuit explained,

> Section 404.1513 establishes two categories of medical evidence, "acceptable medical sources" and "other sources." Generally speaking, "acceptable medical sources" are licensed physicians and psychologists. 20 C.F.R. § 404.1513(a). The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a "treating source," a "non-treating (but examining) source," or a "non-examining source." *Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir.2007). "Other sources" is everyone else, including nurse practitioners, physician's assistants, and therapists. 20 C.F.R. § 404.1513(d)(1). More specifically, nurse practitioners, therapists, and the like are "non-acceptable medical sources." *See id.* The opinion of a "non-acceptable medical source" is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014).

*Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015).

8

Recognizing that patients are increasingly being treated by "other sources" such as physician's assistants, the Social Security Administration issued SSR 06-03p, "Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims," to clarify how the Administration considers opinions from "other sources." 2006 WL 2329939 (Aug. 9, 2006). "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *3. The Administration stated the factors found in 20 C.F.R. § 404.1527(d) "can be applied to opinion evidence" from other sources. *Id.* at *4. These factors include the length and frequency of the treating relationship, the consistency and supportability of the opinion with the other evidence, whether the source has a specialty, and how well the source explains their opinion. "Not every factor for weighing opinion evidence will apply in every case." *Id.* at *5. The Administration went on to explain the opinion from the non-acceptable medical source may be given greater weight than the opinion of a treating source. It may be appropriate where the "other source" has seen the claimant more often that the treating source and has provided better supporting evidence and better explanation for her opinion. *Id.* at *5. However, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may

9

justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" *Id.*

PA-C Minard stated her opinion in a December 28, 2016 treatment record. Grabow treated with PA-C Minard on that date for a re-check of her right knee eight and a half months after surgery on the knee. She complained of a bandlike tightness around her knee and stated she was unable to kneel on her right knee and was unable to stoop or squat because of the deficit in range of motion in the knee. (ECF No. 11, PageID.453). Physical examination revealed "excellent healing of the incision" on her right knee and range of motion limited to 100 degrees of flexion. PA-C Minard then opined it appeared Grabow had plateaued in her recovery. Grabow's range of motion deficit was "likely to be long lasting." PA-C Minard opined the range of motion deficit would prevent Grabow from kneeling, stooping, and climbing. Grabow was advised to continue stretching and doing strengthening exercises on her own. (*Id.* at PageID.454).

The ALJ recognized PA-C Minard as Grabow's "orthopedic provider," but gave her opinion little weight because (1) she was not the physician who performed the knee surgery and (2) her opinion predates subsequent treatment in the record. (*Id.* at PageID.76). As to the first stated reason, it appears the point the ALJ was making was that PA-C Minard was not a physician or surgeon.

Moreover, the ALJ relied on opinions from physicians who also did not perform the knee surgery, so it does not appear the ALJ discounted the opinion merely because PA-C Minard was not the surgeon.  Nevertheless, physician assistants, unlike physicians, were not considered acceptable medical sources.  Therefore, noting that PA-C Minard was not the surgeon is a proper factor to consider when evaluating the opinion.

As to the second stated reason, the ALJ was not incorrect that there was subsequent treatment.  Plaintiff again was treated for her right knee issues during 2018 when she received an injection in the knee.  Subsequently, she was evaluated for discomfort in the knee.  An MRI in November 2018 revealed a torn meniscus.  Grabow ultimately opted for surgical repair rather than injections to treat the tear.  She underwent surgery in January 2019.  (*Id.* at PageID.694, 707).  The fact that Grabow suffered the meniscus tear does not necessarily equate to a limitation in stooping.  Notably, there was no notation of a deficit in range of motion or inability to perform postural tasks in the records from 2018.  Further, although there was no treatment associated with the examination, Grabow was subsequently seen by examining consultative physician Dr. Pollack on May 8, 2017.  On objective physical examination, Dr. Pollack found Grabow's knee flexion to be at the full 150 degrees.  (*Id.* at PageID.499).  Dr. Pollack noted Grabow did not have difficulty getting on and off the examination table and had only moderate difficulty

11

squatting. She further found Grabow's motor strength to be 5/5 and sensation was intact. (*Id.* at PageID.498, 500).

The ALJ expressly addressed some of the factors found in 20 C.F.R. § 404.1527(d)—the treating relationship (Grabow's "orthopedic provider"), Minard's specialty as an orthopedic physician's assistant, the fact that Minard was not a licensed physician, and noted there was subsequent treatment in the record. Arguably, the ALJ's stated reasons for discounting the opinion are adequate to meet the demands of SSR 06-03p for evaluation of "other source" opinions. *See Edwards v. Comm'r of Soc. Sec.*, 2016 WL 54690, at *7 (W.D. Mich. Jan. 5, 2016) ("While the ALJ is not required to explicitly discuss each of [the 20 C.F.R. § 404.1527(c)] factors [in weighing an 'other source'], the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment."); *Drain v. Comm'r of Soc. Sec.*, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) ("So long as the ALJ addresses the opinion of a social worker and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations.").

As previously discussed, SSR 06-03p requires the ALJ to explain the weight given to the opinions of "other sources," **or** otherwise ensure that the discussion of the evidence in the decision allows the claimant or subsequent reviewer to follow the ALJ's reasoning. Indeed, the Court should read the ALJ's decision as a whole.

12

*See Athey v. Comm'r of Soc. Sec.*, 2014 WL 4537317 at *4 (E.D. Mich. 2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision"). The ALJ's discussion of the medical evidence and other opinion evidence, in conjunction with the stated reasons, allows the Court to follow the ALJ's reasoning for discounting PA-C Minard's opinion. Thus, even if the stated reasons for discounting the opinion were insufficient, the undersigned finds no cause to remand this case for further determination.

The ALJ began his discussion on Grabow's right knee with the onset of her knee injury (a car accident on April 21, 2016) and surgical repair. (ECF No. 11, PageID.74). The ALJ discussed the follow-up care she received through December 2016, including her difficulties with range of motion in the knee, such as the finding by PA-C Minard in December 2016 of 100-degree flexion in the knee. Next, the ALJ discussed Dr. Pollack's May 2017 opinion, recounted above, which included findings of normal flexion in both knees and no impairment in stooping or crawling, but only moderate difficulty in squatting. The ALJ also discussed the 2018 injection and recommendation of surgical intervention for the meniscus tear. (*Id.* at PageID.74-75).

The ALJ gave Dr. Pollack's opinion some weight, finding the medical records indicated Grabow had reduced range of motion in her knee that resulted in some limitations, i.e. only occasional crawling, stooping, or squatting, rather than no limitation in these areas. (*Id.* at PageID.76). The ALJ gave reviewing consultative physician Dr. Henderson's May 12, 2017, opinion great weight. Dr. Henderson reviewed the evidence on Grabow's right knee surgery and follow-up care. He also reviewed Dr. Pollack's opinion. (*Id.* at PageID.143-44). After his review, he opined Grabow could perform a reduced range of light work without postural limitations. (*Id.* at PageID.145-47). The ALJ found this opinion to be supported by the evidence, except the ALJ declined to adopt a limitation in hand use. (*Id.* at PageID.76). The ALJ then weighed PA-C Minard's opinion.

In addition to the medical evidence, the ALJ also noted that Grabow reportedly exercised 5-7 days a week, including walking. (*Id.* at PageID.74, 531).

The undersigned is able to follow the ALJ's reasoning for discounting the opinion through the ALJ's discussion of the evidence: (1) on examination in May 2017 Dr. Pollack found no range of motion deficit in the right knee, (2) Dr. Henderson concurred Grabow was not limited in stooping or crawling, (3) treatment notes in 2018 demonstrate continued problems in her right knee, but not necessarily that Grabow was incapable of stooping, (4) Grabow exercised almost every day, and (5) PA-C Minard was not a physician and subsequent treatment did

14

not reveal an inability to stoop. The ALJ recognized Grabow continued to struggle with range of motion in her right knee, so he limited her to, among other things, only occasional stooping, crawling, or squatting. The evidence cited by the ALJ is substantial evidence in support of his decision. Thus, the decision should be affirmed, even if there is substantial evidence in support of Grabow's position. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### G. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 30, 2021
s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge